Schuyler G. Carroll
Jeffrey Vanacore
ARENT FOX LLP
1675 Broadway
New York, New York 10019
212-484-3900

Attorney for Roy Babitt, Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                                        :
In re                                                   :
                                                        :          Chapter 7
RUSSELL RESTAURANT GROUP, LLC,                          :
                                                        :          Case No. 04-14738 (RDD)
                            Debtor.                     :
                                                        :
                                                        :
------------------------------------------------------- x

## OBJECTION OF ROY BABITT, CHAPTER 7 TRUSTEE,
## TO ADMINISTRATIVE EXPENSE AND SECURED CLAIMS FILED
## BY MICHAEL RING, FRANK RING, ET AL., TENANTS IN COMMON

Roy Babitt, the Chapter 7 Trustee (the "Trustee") of Russell Restaurant Group,

LLC (the "Debtor"), by his attorney, Arent Fox LLP, hereby objects to the (a)

administrative expense claim in the amount of $70,000 and certain other unspecified

amounts (the "Admin Claim") asserted in the rider of the proof of claim (the "Proof of

Claim") filed by Michael Ring, Frank Ring, *et al*., Tenants in Common (the "Landlord"),

(b) secured claim in the amount of $480,000 (the "Secured Claim"), and (c) unsecured

claim in the same amount (the "Unsecured Claim"), incurred in connection with a lease

(the "Lease") of non-residential real property located at 331 Park Avenue South, New

York, New York (the "Premises"). A copy of the Proof of Claim, including its

attachments, is annexed hereto as Exhibit A. In support of the objection, and as further

stated in Declaration of Christopher Russell attached hereto as Exhibit B, the Trustee

respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Debtor surrendered possession of the Premises to the Landlord, two weeks before the Petition Date.  The Landlord simultaneously accepted the surrender and thereafter, excluded the Debtor from the Premises.  Accordingly, the Landlord is not entitled to an administrative expense claim.

2.      The Landlord failed to even attempt to assert any basis for a secured claim and can not demonstrate any perfected security interest in any property of the estate other than the Security Deposit, which it retained.  Thus, its Secured Claim must be reclassified as unsecured and reduced by the amount of the Security Deposit.  Finally, even if the Landlord could demonstrate entitlement to an administrative expense claim, the security deposit is well in excess of that claim and thus, should be expunged.

## BACKGROUND

3.      On July 14, 2004 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

4.      On June 30, 2004, two weeks before the commencement of this chapter 7 case, the Debtor and the Landlord agreed to a surrender of the Premises, as well as certain of the property in the premises, to the Landlord.  A list of items to be turned over to the Landlord was prepared and on the same day, the Debtor removed all other property, abandoned the Premises, and surrendered the keys to the Premises' superintendent.

5.      The superintendent was present throughout the entire moving process, taking pictures, ensuring that the Debtor did not take any property required to be

surrendered, that all other property was removed, and that the Premises was returned to the Landlord in proper condition.

6.       Shortly thereafter, the Landlord changed the locks to the Premises.  Thus, when the Debtor's principal, Mr. Russell, later attempted to retrieve some financial documents from the Premises, he was precluded from re-entering the Premises.  As a result, the Debtor was never able to return to the Premises, since June 30, 2004 – two weeks before the Petition Date.

7.       Neither the Debtor nor the Trustee ever had access or use of the Premises during the course of this Chapter 7 case.  Since the Petition Date, the Trustee proceeded with liquidating the estate and never operated the Debtor's business pursuant to section 721 of the Bankruptcy Code.

8.       On December 27, 2004, the Landlord filed the Proof of Claim.  The Proof of Claim asserts (a) an administrative expense claim in the amount of $70,000 and certain other unspecified amounts, (b) a secured claim in the amount of $480,000, and (c) an unsecured claim in the same amount.

9.       The Proof of Claim fails to explain any basis for the assertions that the amounts claimed are entitled to administrative expense or secured status.  Indeed, there is no indication whatsoever of the existence of any collateral and the only indication is that the value of any collateral is "unknown."  The Trustee is not aware of any collateral, other than the security deposit of $150,000 (the "Security Deposit").[1]

10.      The Landlord filed no other pleading with this Court and made no "request" for payment of an administrative expense claim, as required under section 503

---

[1] The Trustee does not object to the Secured Claim to the extent it is asserted in respect of the Security Deposit. Nor does the Trustee seek return of the Security Deposit from the Landlord.  In order for the Landlord to retain the Security Deposit, however, its Proof of Claim must be reduced by $150,000.

of the Bankruptcy Code.

**OBJECTION**

**A.      The Landlord Failed to Give Notice of Its Assertion of an Administrative Expense and Failed to Comply with the Requirements of Section 503**

11.      The Landlord failed to properly assert an administrative expense because it was solely filed on Official Form 10, which is a standard form for filing a proof of claim arising pre-petition, but which may not be used for asserting an administrative expense claim.

12.      Indeed, the face of Official Form 10 expressly provides: "This form should not be used to make a claim for an administrative expense arising after the commencement of the case.  A 'request' for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503."

13.      Further, the Landlord failed to file any pleading with this Court, either requesting payment as an administrative expense claim or otherwise.  Such request is required under section 503 of the Bankruptcy Code.  *See* 11 U.S.C. § 503(a) (stating that entity seeking allowance of an administrative expense may "file a request for payment.")

14.      Section 503(b) of the Bankruptcy Code enumerates certain claims which, after a notice and hearing, shall be deemed to be allowed administrative claims entitled to priority status.  11 U.S.C. §§ 503(b) & 507(a).

15.      The Landlord made no such request for payment and did not obtain a hearing.  More importantly, the Landlord failed to give notice.  The only assertion of administrative expense status is contained, well hidden, in the single spaced details of the rider attached to the Proof of Claim.  The face of the Proof of Claim contains no indication that it asserts administrative expense status.  There is nothing in bold,

highlighted, underlined, in a larger font or even in a heading or at the top of a paragraph, and nothing at all on the front page, that indicates administrative expense status. Indeed, the clerk's office was unable to identify the assertion of administrative expense status and did not lodge the claim as an administrative expense claim in the claims register.

16.     By so doing, the Landlord failed to provide notice to any party of its assertion of administrative expense status.

17.     The Landlord, therefore, failed to comply with the requirements of section 503 of the Bankruptcy Code. Accordingly, the Admin Claim must be disallowed in full and expunged.

**B.     The Landlord Is Not Entitled to an Administrative Expense Claim
Because Before the Petition Date,
the Debtor Surrendered Possession of the Premises and the
<u>Landlord Affirmatively Accepted the Surrender and Took Back Possession</u>**

18.     Even if the Landlord had satisfied its procedural obligations, the Landlord is not entitled to any administrative expense claim because the Landlord took back possession of the Premises before the Petition Date and the Trustee never had access to the Premises.

19.     Two weeks before the Petition Date, the Debtor surrendered the keys and abandoned the Premises to the Landlord. The Landlord thereafter changed the locks, affirmatively precluding the Debtor (and the Trustee) from ever re-entering the Premises and thereby terminating the Lease. Indeed, as explained in the accompanying Declaration of Christopher Russell, the Debtor attempted to, but was unable to re-enter the Premises.

20.     Under these circumstances, as of the Petition Date, the Lease was no longer property of the estate pursuant to section 541(a) of the Bankruptcy Code and

therefore could not be assumed or rejected pursuant to section 365 of the Bankruptcy Code.

21. Accordingly, it is clear that the Landlord is not entitled to an administrative expense claim and the Admin Claim must be disallowed in full and expunged.

**C.    The Landlord Can Not Demonstrate that It Is Entitled to a**
**Claim for an "Actual, Necessary Cost of Preserving the Estate"**

22. If the Landlord believes that any portion of its claim accrued post-petition and therefore is entitled to an administrative expense priority, the Landlord must seek affirmative relief from this Court and demonstrate that such amounts are indeed entitled to priority in accordance with the standards pursuant to § 503(b) of the Bankruptcy Code.

23. Section 503(b) provides administrative priority only for expenses that were "actual, necessary costs of preserving the estate."  11 U.S.C. § 503(b)(1)(A).[2]

24. The Landlord cannot show that any of its claim was incurred as "actual, necessary costs of preserving the estate" because the Premises were surrendered prior to the Petition Date, the Trustee proceeded with liquidating the estate and never operated the Debtor's business pursuant to section 721 of the Bankruptcy Code.

25. In addition, since the Landlord retained the Security Deposit in the amount of $150,000, even if it is entitled to an administrative expense claim, that claim must be reduced by $150,000, more than twice the asserted amount of the Admin Claim.

26. Accordingly, the Admin Claim must be disallowed in full and expunged.

---

[2] The provisions of section 365(d)(3) of the Bankruptcy Code, which require the Trustee to "perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected," do not support the request for administrative expense status because the Premises were surrendered by the Debtor and accepted by the Landlord pre-petition.

**D.** **The Secured Claim Must Be Reclassified as Unsecured and Reduced by $150,000, the Amount of the Security Deposit Retained by the Landlord**

27.     The Landlord failed to assert any basis for its secured claim and to provide any evidence of perfection of a secured claim.  The estate is not in possession of any collateral and the Trustee is not aware of any property that could form the basis of a secured claim.  Accordingly, the Secured Claim should be reclassified as unsecured.

28.     In addition, since the Landlord retained the Security Deposit in the amount of $150,000, its remaining claim must be reduced by $150,000.

29.     The Secured Claim and the Unsecured Claim are wholly duplicative of each other.  Similarly, the Admin Claim is duplicative of other claims.  These duplicative claims should be expunged and the Landlord should retain only one unsecured claim in the amount of $330,000.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter an order disallowing, expunging, reducing and reclassifying all of the Landlord's claims, so that the Landlord retains only one unsecured claim in the amount of $330,000 and granting further relief that is just and proper.

Dated:  December 21, 2009
     New York, New York

ARENT FOX LLP
Attorney for Roy Babitt, Chapter 7 Trustee

By: */s/ Jeffrey Vanacore*
    Schuyler G. Carroll
    Jeffrey Vanacore
    1675 Broadway
    New York, New York 10019
    212-484-3900

# EXHIBIT A

## Proof of Claim

FORM B10 (OFFICIAL FORM 10) (04/04)

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| In re<br>**RUSSELL RESTAURANT, LLC** | Case Number<br>**04-14738(RDD)** |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

Name of Creditor: (The person or other entity to whom the debtor owes money or property):
Michael Ring, Frank Ring, et al., Tenants in Common, c/o FM Ring Associates, Inc.

Name and Address Where Notices Should be Sent:
Mr. Frank Ring          Joseph T. Moldovan, Esq.
FM Ring Associates, Inc.   Morrison Cohen LLP
20 West 47th Street       909 Third Avenue
New York, New York 10036   New York, New York 10022
                          (212) 735-8600

Telephone number:

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account Or Other Number By Which Creditor Identifies Debtor

Check here
if this claim: ☐ replaces   ☐ amends   a previously filed claim, dated _____

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other: Secured Claim for Rent, Additional Rent and Attorneys Fees.

☐ Retiree benefits as defined in 11 U.S.C. § 1114 (a)
☐ Wages, salaries, and compensations (fill out below)
Last four digits of SS #:_____
Unpaid compensation for services performed
from _____ to _____
     (date)        (date)

**2. Date Debt was Incurred**
SEE ATTACHED

**3. If Court Judgment, Date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $_____   $480,000   _____   $480,000, plus accruing interest, rent, additional rent,
                                    (unsecured)   (secured)   (priority)   (Total)   and attorneys fees, subject to 11 USC 502(b)(6)
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.   SEE RIDER ATTACHED
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☒ Other See Attached
Value of Collateral: $ Unknown
Amount of arrearage and other charges at time case filed included in secured claim, if any: $ 480,000

**6. Unsecured Nonpriority Claim** $_____
☐ Check this box: a) if there is no collateral or lien on property of the debtor securing the claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority

**7. Unsecured Priority Claim**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
☐ Wages, salaries or commission (up to $4,925)*, earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4).
☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family or household use - 11 U.S.C. §507(a)(6).
☐ Alimony, maintenance or support owed to a spouse, former spouse or child - 11 U.S.C. §507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. §507(a).(___)
* Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**9. Supporting Documents:** _Attach copies of supporting documents_, such as a promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date<br>12/23/2004 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br>Mr. Michael Ring<br>FM Ring Associates, Inc.<br>20 West 47th Street<br>New York, New York 10036      _Michael Ring_ |
|---|---|

_Penalty for presenting fraudulent claim:_ Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

#521621 v1 \14737\019

# RIDER TO PROOF OF CLAIM AND ADMINSTRATIVE CLAIM

The amount claimed in this proof of claim is believed to be accurate but is under review by Claimant and may be adjusted upward or downward after Claimant's review is concluded. The amount stated is also being reviewed to determine if it correctly takes into consideration any potential limitation on the claim imposed by section 502 of the Bankruptcy Code. Claimant reserves all rights to file an amended proof of claim that may include items of additional rent, costs, fees, attorneys fees, and the like that Claimant is entitled to under the Lease and this Rider constitutes notice that there may be additional damages claimed by Claimant.

This proof of claim shall also constitute Claimant's administrative proof of claim for rent owed Claimant during the case for the period from the petition date through the date of the rejection of the Lease. The amount owed Claimant for this period is not less than $70,000, plus additional rent, costs, fees, attorneys fees, and the like that Claimant is entitled to under the Lease and this Rider constitutes notice that there may be additional administrative damages claimed by Claimant. Claimant may file, and reserves all rights to file, a supplement to this proof of claim, or an amended proof of claim, to include the exact amounts owed as administrative rent for the post petition pre-rejection period.

## STANDARD FORM OF STORE LEASE
### The Real Estate Board of New York, Inc.

2/94-A

**Agreement of Lease,** made as of this ____ 1st ____ day of October, 2000 ____, between MICHAEL RING, FRANK RING et al, Tenants in Common, c/o F. M. Ring Associates, Inc., 20 West 47th Street, New York, New York 10036, party of the firt part, hereinafter referred to as OWNER, and RUSSELL RESTAURANT GROUP LLC, a New York limited liability company, having an office at c/o Christopher Russell, 180 Riverside Drive, New York, New York

party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner a portion as currently divided of the Ground Floor and the Basement and Second (2nd) Floor

in the building known as 331 Park Avenue South

in the Borough of Manhattan , City of New York, for the term of twelve (12) years

(or until such term shall sooner cease and expire as hereinafter provided) to commence on the 1st day of January two thousand one , and to end on the 31st day of December, two thousand twelve and both dates inclusive, at an annual rental rate as follows:

$322,200.00 from January 1, 2001 to December 31, 2001
$420,000.00 from January 1, 2002 to December 31, 2005
$450,000.00 from January 1, 2006 to December 31, 2010
$480,000.00 from January 1, 2011 to December 31, 2012

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

**Rent:** 1. Tenant shall pay the rent as above and as hereinafter provided.

**Occupancy:** 2. Tenant shall use and occupy demised premises for a first-class restaurant

and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and the side-walks adjacent thereto, and at its sole cost and expense, make all non-structural provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner and Tenant agrees to carry and will cause Tenant's contractors and sub-contractors to carry such workman's compensation, general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within 30 days thereafter at Tenant's expense, by payment or filing the bond required by law. All fixtures and all paneling, partitions, railings and like installations, installed in the premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's right thereto and to have them removed by Tenant, in which event, the same shall be removed from the premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to or to prevent Tenant's removal of trade fixtures, moveable office furniture and equipment, but upon removal of any such from the premises or upon removal of other installation as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the premises to the condition existing prior to installation and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the item remaining in the premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the premises by Owner at Tenant's expense.

**Repairs:** 4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance and shall cause the same to be operated in a good and workmanlike manner and shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant

shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall be not entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other Casualty which are dealt with in Article 9 hereof.

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the premises, if the premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building if arising out of Tenant's use or manner of use of the premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do

or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner. Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or demised premises issued by a body making fire insurance rates applicable to said premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate then applicable to said premises.

**Sub-ordination:**

7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which demised premises are a part and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Owner may request.

**Tenant's Liability Insurance Property Loss, Damage, Indemnity:**

8. Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of or damage to any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agents will not be liable for any such damage caused by other tenants or persons in, to or about said building or caused by operations in construction of any private, public or quasi public work. Tenant agrees, at Tenant's sole cost and expense, to maintain general public liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefor, Owner may secure or pay the charges for any such policy or policies and charge the Tenant as additional rent therefor. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agent, contractors, employees, invitees, or licensees, of any covenant on condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction, Fire, and Other Casualty:**

9. (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner and the rent and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly provided shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the premises shall have been repaired and restored by Owner or sooner reoccupied in part by Tenant then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty or 30 days after adjustment of the insurance claim for such fire or casualty, whichever is sooner, specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the premises are substantially ready for Tenant's occupancy. (e) Nothing contained herein above shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, including Owner's obligation to restore under subparagraph (b) above, each party shall

Rider to be added if necessary.

look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery with respect to subparagraphs (b), (d) and (e) above, against the other or any one claiming through or under each of them by way of subrogation or otherwise. The release and waiver herein referred to shall be deemed to include any loss or damage to the demised premises and/or to any personal property, equipment, trade fixtures, goods and merchandise located therein. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or on any fixtures or equipment, improvements, or appurtenances removable by Tenant and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent Domain:**

10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease. Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of the lease to remove such property, trade fixtures and equipment at the end of the term and provided further such claim does not reduce Owner's award.

**Assignment, Mortgage, Etc.:**

11. Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. Transfer of the majority of the stock of a corporate tenant or the majority partnership interest of a partnership tenant shall be deemed an assignment. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric Current:**

12. Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

**Access to Premises:**

13. Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform, in the premises, following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein, provided they are concealed within the walls, floors or ceiling, wherever practicable. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction nor shall the Tenant be entitled to any abatement of rent while such work is in progress nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants and may, during said six months period, place upon the demised premises the usual notice "To Let" and "For Sale" which notices Tenant shall permit to remain thereon without molestation. If Tenant is not present to open and permit an entry into the demised premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible by master key or forcibly and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render Owner or its agents liable therefore, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation and such act shall have no effect on this lease or Tenant's obligations hereunder. Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefor to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other public parts of the building and to change the name, number or designation by which the building may be known.

**Vault, Vault Space, Area:**

14. No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the

building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Tenant. **14.1**

**Occupancy:** 15. Tenant will not at any time use or occupy the demised premises in violation of Articles 2 or 37 hereof, or of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the premises and Tenant agrees to accept the same subject to violations whether or not of record.

**Bankruptcy:** 16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installments of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If such premises or any part thereof be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part or the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:** 17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title II of the U.S. Code (Bankruptcy Code); or if Tenant shall fail to move into or take possession of the premises within thirty (30) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written fifteen (15) days notice upon Tenant specifying the nature of said default and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced curing such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written five (5) days notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein or any item of additional rent herein mentioned or any part of either or in making any other payment herein required; then and in any of such events Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of demised premises and remove their effects and hold the premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of Owner and Waiver of Redemption:** 18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or other wise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of

the term of this lease. The failure of Owner to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgement, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant or any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and Expenses:** 19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease, after notice if required and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending any actions or proceeding and prevails in any such action or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefor, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Representation by Owner:** 20. Neither Owner nor Owner's agent have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the premises except as herein expressly set forth and no rider, statements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises, and is thoroughly acquainted with their condition, and agrees to take the same "as is" and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:** 21. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holiday in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:** 22. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:** 23. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any way to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession or complete construction) until after Owner shall have given Tenant written notice that the Owner is able to deliver possession in the condition required by this lease. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease. Tenant covenants and agrees that such possession and/or occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease except the obligation to pay the fixed annual rent set forth in page

one of this lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:** 24. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount then the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed in acceptance of a surrender of said premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of said premises prior to the termination of the lease and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the premises.

**Waiver of Trial by Jury:** 25. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in event Owner commences any proceeding or action for possession including a summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding, including a counterclaim under Article 4 except for statutory mandatory counterclaims.

**Inability to Perform:** 26. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease or to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repair, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment, fixtures or other materials if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption or restrictions or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions of which have been or are affected, either directly or indirectly, by war or other emergency, or when, in the judgment of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:** 27. Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner shall designate by written notice.

**Water Charges:** 28. If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof and throughout the duration of Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Owner shall be payable by Tenant as additional rent. If the building or the demised premises or any part thereof be supplied with water through a meter through which water is also supplied to other premises Tenant shall pay to Owner as additional rent, on the first day of each month,

_____ $3_____ ($100.00 ) of the total sewer charges, as Tenant's portion. Independently of and in addition to any of the remedies reserved to Owner hereinabove or elsewhere in this lease, Owner may sue for and collect any monies to be paid by Tenant or paid by Owner for any of the reasons or purposes hereinabove set forth.

**Sprinklers:** 29. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Services Office or any bureau, department or official of the federal, state or city government requires or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system

_Space to be filled in or deleted._

installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company, Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the sum of

_____ $ 100._ 00 _____ on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

**Elevators, Heat, Cleaning:** 30. As long as Tenant is not in default under any of the covenants of this lease beyond the applicable grace period provided in this lease for the curing of such defaults, Owner shall, if and insofar as existing facilities permit furnish heat to the demised premises, when and as required by law. on business days from 8:00 a.m. to 6:00 p.m. and on Saturdays from 8:00 a.m. to 1:00 p.m. Tenant shall at Tenant's expense, keep demised premises clean and in order, to the satisfaction to Owner, and if demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, and keep said sidewalks and curbs free from snow, ice, dirt and rubbish. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such times as Owner may elect and shall be due and payable when rendered, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building.

**Security:** 31. Tenant has deposited with Owner the sum of $150,000 as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum as to which Tenant is in default or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the re-letting of the premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Owner nor his successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

## SEE ARTICLE 56

**Captions:** 32. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:** 33. The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties of their successors in interest, or between the parties and the purchaser, at any such sale, or the said lessee of the building, or of the land and building, that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays, Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonably delayed.

**Adjacent Excavation-Shoring:** 34. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building of which demised premises form a part from injury or damage and to support the same by proper foundations without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:** 35. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the

parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. This right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing upon Owner within fifteen (15) days after the giving of notice thereof. Nothing in this lease contained shall be construed to improve upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Glass:**
36. Owner shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefor shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

**Pornographic Uses Prohibited:**
37. Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances on the premises, nor permit use of the premises for nude modeling, rap sessions, or as a so called rubber goods shop, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the premises. This Article

shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal or any objects of instruments that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal law §235.00.

**Estoppel Certificate:**
38. Tenant, at any time, and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates which the rent and additional rent have been paid, and stating whether or not there exists any defaults by Owner under this lease, and, if so, specifying each such default.

**Successors and Assigns:**
39. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

*In Witness Whereof,* Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

F. M. KING ASSOCIATES, INC., as agent for
MICHAEL KING, FRANK KING, et al., TENANTS IN COMMON

Witness for Owner:

By ..................................................

.................................................................

RUSSELL RESTAURANT GROUP LLC

Witness for Tenant:

By ..................................................

.................................................................

....................................................

## ACKNOWLEDGEMENTS

**CORPORATE OWNER**
**STATE OF NEW YORK,** ss.:
**County of**

On this        day of                    , 19
before me personally came
to me known, who being by me duly sworn, did depose and say that he resides in
that he is the                              of
the corporation described in and which executed the foregoing instrument, as OWNER; that he knows the seal of said corporation; the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

....................................................

**CORPORATE TENANT**
**STATE OF NEW YORK,** ss.:
**County of.**

On this        day of                    , 19
before me personally came
to me known, who being by me duly sworn, did depose and say that he resides in
that he is the                              of
the corporation described in and which executed the foregoing instrument, as TENANT; that he knows the seal of said corporation; the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

....................................................

**INDIVIDUAL OWNER**
**STATE OF NEW YORK,** ss.:
**County of**

On this        day of                    , 19
before me personally came
to be known and known to me to be the individual described in and who, as OWNER, executed the foregoing instrument and acknowledged to me that                    he executed the same.

....................................................

**INDIVIDUAL TENANT**
**STATE OF NEW YORK,** ss.:
**County of**

On this        day of                    , 19
before me personally came
to be known and known to me to be the individual described in and who, as TENANT, executed the foregoing instrument and acknowledged to me that                    he executed the same.

....................................................

## GUARANTY

The undersigned Guarantor guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the agreements to be performed and observed by Tenant in the attached Lease, including the "Rules and Regulation" as therein provided, without requiring any notice to Guarantor of nonpayment, or nonperformance, or proof, or notice of demand, to hold the undersigned responsible under this guaranty, all of which the undersigned hereby expressly waives and expressly agrees that the legality of this agreement and the agreements of the Guarantor under this agreement shall not be ended, or changed by reason of the claims to Owner against Tenant of any of the rights or remedies given to Owner as agreed in the attached Lease. The Guarantor further agrees that this guaranty shall remain and continue in full force and effect as to any renewal, change or extension of the Lease. As a further inducement to Owner to make the Lease Owner and Guarantor agree that in any action or proceeding brought by either Owner or the Guarantor against the other on any matters concerning the Lease or of this guaranty that Owner and the undersigned shall and do waive trial by jury.

Dated: .......................................... 19......

.........................................................
Guarantor

.........................................................
Witness

Guarantor's Residence

Business Address

Firm Name

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF                  )

On this ............ day of ...................... , 19......
before me personally came ..........................................
to me known and known to me to be the individual described in, and
who executed the forgoing Guaranty and acknowledged to me that he
executed the same.

.........................................................
                                              Notary

## IMPORTANT - PLEASE READ

### RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.

1. The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress to and egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public hall of the building, either by any tenant or by jobbers, or others in the delivery or receipt of merchandise, any hand trucks except those equipped with rubber tires and safeguards.

2. If the premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of said premises clean and free from ice, snow, etc.

3. The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed.

4. Tenant shall not use, keep or permit to be used or kept any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors and/or vibrations or interfere in any way with other Tenants or those having business therein.

5. No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any Tenant on any part of the outside of the demised premises or the building or on the inside of the demised premises if the same is visible from the outside of the premises without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the premises. In the event of the violation of the foregoing by any Tenant, Owner may remove same without any liability and may charge the expense incurred by such removal to Tenant or Tenants violating this rule. Signs on interior doors and directory tablet shall be inscribed, painted or affixed for each Tenant by Owner at the expense of such Tenant, and shall be of a size, color and style acceptable to Owner.

6. No Tenant shall mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner, and as Owner may direct. No Tenant shall lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used an interlining of builder's deadening felt shall

be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7. Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the premises only on the freight elevators and through the service entrances and corridors, and only during hours as in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations or the lease of which these Rules and Regulations are a part.

8. Owner reserves the right to exclude from the building between the hours of 6 P.M. and 8 A.M. and at all hours on Sundays, and holidays all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom any Tenant requests same in writing. Each Tenant shall be responsible for all persons for whom he requests such pass and shall be liable to Owner for all acts of such persons.          RS.1

9. Owner shall have the right to prohibit any advertising by any Tenant which, in Owner's opinion, tends to impair the reputation of Owner or its desirability as a building for stores or offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

10. Tenant shall not bring or permit to be brought in or on the demised premises, any inflammable, combustible, or explosive, or hazardous fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors to permeate in or emanate from the demised premises.          R10.1

11. Tenant shall not place a load on any floor of the demised premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant at Tenant's expense in setting sufficient in Owner's judgement to absorb and prevent vibration, noise and annoyance.

12. Refuse and Trash - Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash. Tenant shall pay all costs, expenses, fines, penalties or damages that may be imposed on Owner or Tenant by reason of Tenant's failure to comply with the provisions of this Building Rule 12, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Owner harmless (including reasonable legal fees and expenses) from and against any actions, claims and suits arising from such non-compliance, utilizing counsel reasonably satisfactory to Owner.

STANDARD FORM OF

## Store Lease

The Real Estate Board of New York, Inc.
© Copyright 1994. All rights Reserved.
Reproduction in whole or in part prohibited.

Address ....................................................

Premises ...................................................

TO

Dated ............................ 19 ......

Rent Per Year ..............................

Rent Per Month .............................

Term ....................................
From ...................................
To .....................................

Drawn by ...................................
Checked by .................................
Entered by .................................
Approved by ................................

3.1      after notice to Tenant

9.1      the date of such casualty

10.1      and the base rental and escalation shall be equitably apportioned to the date of such title vesting.

10.2      The provisions of Article 31 relating to the return of the security deposit upon expiration of the term of this lease shall apply to a termination of this lease effected pursuant to this Article 10.

13.1      to the extent that Landlord requires access to the demised premises for the purpose of performing therein any repairs or alterations pursuant to the rights granted it hereunder, Landlord shall, in connection with the performance of such repairs or alterations, make a reasonable effort to minimize any inconvenience to Tenant provided that nothing contained herein shall obligate Landlord in connection therewith to incur any overtime or premium pay or other additional expense by reason thereof.

14.1      Tenant shall be permitted access to and the use of the existing sidewalk elevator and/or elevator well outside the Building and shall be permitted, to install therein at Tenants's sole cost and expense, a chute or stairway for the purpose of receiving deliveries, provided that, any such chute or stairway shall extend to common areas of the basement or that portion of the basement demised to Tenant hereunder, and in no event into space either leased to or available for leasing to other tenants. Any such installation shall be performed in accordance with all applicable laws, rules, regulations and orders of public authorities having jurisdiction and in accordance with all applicable provisions of the lease including, without limitation, Article 3 thereof. Landlord makes no representation as to the condition of the well or its suitability for such installation or purpose. If Tenant makes such installation, Tenant shall be solely responsible throughout the term for the operation, maintenance, repair and safety thereof as well as its continuing compliance with all laws, rules, regulations and orders of public authorities bearing thereon whether or not arising out of Tenant's use or manner of use thereof.

17.1      twenty (20)

35.1      Landlord agrees that it shall not apply the rules and regulations as to Tenant in a discriminatory fashion. Notwithstanding the foregoing, the parties acknowledge that Tenant is the only retail or store or restaurant occupant of the Building, and that, therefore, there may be rules and regulations to which Tenant is subject that are inapplicable to other tenants or occupants of the building or as to which violation by other tenants of occupants of the building would not have the same adverse effect as violation thereof by Tenant. Therefore, nothing contained herein shall obligate Landlord to refrain from enforcing rules and regulations which are applicable to Tenant notwithstanding that the same are not being enforced as to other tenants in the building because of the difference in use of the premises involved or in Landlord's reasonable judgment the impact on the building and/or Landlord's operation thereof.

R8.1      Nothing contained in this Rule 8 shall be deemed to entitle Owner to exclude from the demised premises any persons gaining access thereto from the street entrance of the demised premises.

R10.1      Any cooking or other odors produced within the demised premises shall be vented to the exterior of the Building in accordance with all applicable laws, rules, codes, regulations and other directions of public authorities having jurisdiction.

228986 v.4



RIDER ATTACHED TO LEASE MADE AS OF OCTOBER 1, 2000, BETWEEN
MICHAEL RING, FRANK RING, ET AL, TENANTS-IN-COMMON, AS LANDLORD,
AND RUSSELL RESTAURANT GROUP LLC, AS TENANT, PERTAINING TO A
PORTION OF THE GROUND FLOOR AS CURRENTLY DIVIDED AND THE
BASEMENT AND SECOND FLOOR OF THE BUILDING KNOWN AS 331 PARK
AVENUE SOUTH, NEW YORK, NEW YORK.

41. **Landlord Defined.** Owner may be referred to in this lease as "Landlord".

42. **Offer of Lease.** This lease is offered to the Tenant for signature by the managing agent of the building, subject to Landlord's acceptance and approval, with the understanding that this lease shall not in any way bind Landlord or its agents until it is executed and delivered by the Landlord.

43. **Conflicts.** In the event any provision contained in this rider is inconsistent or in conflict with the printed portion of this lease, the rider provision shall prevail.

44. **Escalations.** (a) The base rental provided for in the printed portion of this lease shall escalate in accordance with, and shall be as, set forth below:

| For the Period | Monthly Base Rent | Increase Per month | Monthly Payment Base rent + Escalation |
|---|---|---|---|
| From 01/01/01 to 12/31/01 | 26,850.00 | 0 | 26,850.00 |
| From 01/01/02 to 12/31/02 | 35,000.00 | 2,500.00 | 37,500.00 |
| From 01/01/03 to 12/31/03 | 35,000.00 | 4,750.00 | 39,750.00 |
| From 01/01/04 to 12/31/04 | 35,000.00 | 7,000.00 | 42,000.00 |
| From 01/01/05 to 12/31/05 | 35,000.00 | 9,250.00 | 44,250.00 |
| From 01/01/06 to 12/31/06 | 37,500.00 | 10,000.00 | 47,500.00 |
| From 01/01/07 to 12/31/07 | 37,500.00 | 12,250.00 | 49,750.00 |
| From 01/01/08 to 12/31/08 | 37,500.00 | 14,500.00 | 52,000.00 |
| From 01/01/09 to 12/31/09 | 37,500.00 | 16,750.00 | 54,250.00 |
| From 01/01/10 to 12/31/10 | 37,500.00 | 19,000.00 | 56,500.00 |
| From 01/01/11 to 12/31/11 | 40,000.00 | 23,000.00 | 63,000.00 |
| From 01/01/12 to 12/31/12 | 40,000.00 | 24,875.00 | 64,875.00 |

(b) In addition to the base rental (as escalated above) and other charges required to be paid by the terms of this lease, Tenant agrees to pay as additional rent within ten (10) days of Landlord's statement therefor any amount of increase attributable to Landlord for the period of this lease, its extensions and/or renewals (prorated if applicable) above that amount attributable to the "base period" (hereinafter defined) of the following items:

23.75% of any increase to the Landlord in the (i) real estate taxes for the land and/or building (the "Real Estate Taxes"), (ii) assessment reduction costs for the land and/or building i.e., costs incurred by Landlord contesting Real Estate Taxes or the assessed value of the land and/or building (the "Reduction Costs"), (iii) fuel costs for the building (the "Fuel Costs") and (iv) insurance costs for the building (the "Insurance Costs").

The "base period" shall be the respective base year, as defined below, in which November, 2000 shall fall. The base year shall be computed as the twelve-month period from: (x) July 1 to the following June 30, for Real Estate Taxes and Reduction Costs; (y) January 1 to the following December 31, the Fuel Costs and Insurance Costs.

It is understood and agreed that Landlord's New York State Certified Public Accountant's written statement verifying the amounts and computations shall be conclusive and binding evidence of the amounts due under the provisions of this Article.

It is understood and agreed that these items of additional rent may be billed by Landlord to Tenant at any time and shall be due and payable as and when billed. Furthermore in the event Tenant does not make timely payment, Landlord may prorate all the escalations due for the full term of this lease and the entire amount shall be due and payable as and when billed.

#228066.v6

1

**A5.** **Assignment and Subletting.** (a) If Tenant requests Landlord's consent to an assignment of this lease or the subletting of the entire demised premises, such request shall be made in writing and sent to Landlord by certified mail, return receipt requested and Landlord's consent to such request shall, subject to the other provisions of this Article including, without limitation, Paragraph (d), below, not be unreasonably withheld to such requested assignment or subletting, provided that Tenant shall submit to Landlord the name of the proposed assignee or subtenant and such information as to its financial responsibility and standing as Landlord many reasonably require and the proposed transaction and the Tenant and the proposed tenant shall comply with the further requirements of this Article.

(b) In determining whether Landlord's consent to such assignment or subletting may reasonably be withheld, Landlord may consider any or all relevant factors surrounding the proposed sublease or assignment, including, without limitation, the following:

    (i) the business reputation of the proposed assignee or subtenant; .

    (ii) whether the proposed tenancy shall conform to the use mandated by Article 2 hereof;

    (iii) the nature of the proposed facility in the demised premises;

    (iv) the financial condition of the proposed assignee or subtenant; and

    (v) the effect that the proposed assignee's or subtenant's occupancy or use of the demised premises would have upon the operation and maintenance of the building and Landlord's investment therein.

(c) Any assignment shall transfer to the assignee all of Tenant's right in and interest under this lease, including the security deposit.

(d) At the time of Tenant's notice of the proposed assignment or subletting and at the time of the effective date of the assignment or subletting, this lease must be in full force and effect without breach or default hereunder on the part of Tenant.

(e) The assignee shall assume the due performance of all of Tenant's obligations under this lease, including any accrued obligations at the time of the assignment, by recordable instrument, in form and in substance satisfactory to Landlord.

(f) A copy of the assignment and assumption agreement, fully executed and acknowledged by the assignee, shall be delivered to Landlord not less than ten (10) business days prior to the effective date of such assignment and assumption.

(g) Tenant shall reimburse Landlord for Landlord's reasonable expenses, including attorneys' fees, in connection with Landlord's review of the transaction and examination and/or preparation of any documents in connection with such assignment or subletting.

(h) The proposed sublease, fully executed and acknowledged by the subtenant, shall be submitted to Landlord for its approval not less than ten (10) business days prior to its effective date, and shall require the subtenant to comply with all of the provisions of this Lease, and provide Landlord with the right to enforce this lease directly against the subtenant. Once approved by Landlord, no material amendment or change shall be made in the sublease by Tenant without Landlord's further consent..

(i) Any assignment or subletting as above provided, shall not discharge or release Tenant from liability hereunder nor any other individual, firm or corporation which shall have previously assumed Tenant's obligations hereunder, such liability to remain and continue for the balance of the term of this lease with the same force and effect as though no assignment or sublease had been effected.

(j) The proposed sublease shall not be for a term expiring after the expiration of this lease.

(k) The proposed assignment or subletting shall not be to a tenant or any person or firm then or previously in occupancy in the building.

2

(l)  In the event of a sublet, Tenant shall designate F.M. Ring Associates, Inc. ("FMR") as Tenant's exclusive agent to effect the surrender, subletting or assignment.  Upon the execution of the surrender, sublease or assignment, Tenant shall pay FMR a commission at FMR's then current commission rates, except that in the event of a sublet or an assignment as to which FMR shall not be the procuring broker, the commission shall be 50% of such then current commission rates.

(m) Tenant shall not advertise or in any manner list the demised premises, or any part thereof, for rent, assignment or subletting without Landlord's prior written consent.  Any breach by Tenant of this covenant shall be sufficient grounds for Landlord's refusing to consent to any proposed assignment or subletting.

(n)  From time to time during the term of this lease, within five (5) days of Landlord's request, Tenant shall furnish a statement from its certified public accountant certifying that either (i) none of the stock of Tenant has been transferred since the date of this lease or (ii) if stock of Tenant has been transferred since the date of this lease, specifying the amount so transferred and listing the transferors and the transferees, their addresses, the percentage of the outstanding stock of Tenant held by each and the dates of transfer.  Failure to provide the requested statement shall (in addition to giving rise to a default under the terms of this lease) constitute a request to sublet subject to the provisions of this Article, or at Landlord's option shall be deemed an admission that there has been a transaction contemplated by paragraph (e) hereof which Landlord shall then have the right to invoke.

(o)  In the event that any assignment or sublease shall be proposed and Landlord shall consent thereto, the base rental and escalation provided for in Article 44 hereof shall, upon the effective date of such assignment or sublease, be increased to the higher of (i) 110% of the rate then payable (and all monthly payments of base rent and escalation thereafter payable pursuant to Article 44 hereof shall be increased by 10%), or (ii) the fair market rental value of the demised premises as determined by Landlord.  Landlord shall, at Tenant's request in contemplation of a proposed assignment or sublease, advise Tenant as to its estimate of the fair market rental value of the demised premises taking into account all relevant factors, but without reduction for brokerage commissions, costs required to improve the demised premises, the brevity, if applicable, of the remaining term of the lease, interruption of rental income and other similar factors.  If Tenant shall dispute Landlord's estimate of the fair market rental value of the demised premises, Tenant shall, within ten (10) days of receipt thereof, give notice of such dispute to Landlord, which notice shall include the name of its designated arbitrator.  Within ten (10) days after its receipt of Tenant's notice, Landlord shall name an arbitrator and give notice thereof to Tenant (failing which the second arbitrator shall be named in the same manner as the third arbitrator in those instances in which the first and second arbitrators cannot agree).  The two arbitrators shall attempt to reach an agreement.  However, if they are unable to do so within ten (10) days after the appointment of the second arbitrator, the two arbitrators together shall name a third arbitrator within the same ten (10) day period (failing which, at the initiative of either party, a third arbitrator shall be named by the American Arbitration Association).  The three arbitrators shall meet and render a decision within ten (10) days after the appointment of the third arbitrator and may receive or hear in reaching their determination such evidence as they may wish to consider.  The arbitration shall be conducted in accordance with the commercial rules of the American Arbitration Association.  Each of the arbitrators shall have at least ten (10) years' experience in leasing or managing commercial property (including retail space) on behalf of owners of office buildings in the Midtown South business district of Manhattan.  If the arbitrators are unable to agree, the decision of any two arbitrators shall determine the dispute.  The cost of any arbitration, including the fees of the arbitrators, shall be borne by Tenant.  Each of the parties shall be responsible for any legal fees and expenses that it incurs.  The determination reached by the arbitrators in accordance with the foregoing procedure shall be binding on the parties for a period of six (6) months from the date it is rendered.  If Tenant proposes to sublease or assign thereafter, the procedure for establishing the fair market rental therein set forth herein shall be repeated.  If after a decision or an agreement is reached as to the fair market rental of the demised premises, Tenant shall enter into a sublease or assignment which shall reflect a greater rental value for the demised premises than that which was agreed or determined, such greater market value shall be utilized for the purposes of clause (ii) hereof to determine the base rental and escalation payable thereafter under the lease.

46.  **No Personal Liability.**  Notwithstanding anything herein or in any rule of law or statute to the contrary, to the extent that Landlord shall at any time have any liability under, pursuant to or in connection with this lease, neither Tenant nor any officer, director, partner, or other party within the control of Tenant (or any other party claiming through or on behalf of Tenant) shall seek or have the right to enforce any personal or money judgment against Landlord, but shall only pursue any such rights or remedies against Landlord's interest in the building.  In addition to and not in limitation of the foregoing provision of this Article it is agreed that, in no event and under no circumstances, shall Landlord or any partner, officer, employee, agent or principal (disclosed or undisclosed) of Landlord have any personal liability or monetary or other obligation of any kind under or pursuant to this lease.  Any attempt by Tenant or any officer, director, partner or other party within the control of Tenant (or any other party claiming through or on behalf of Tenant) to seek to enforce any such personal liability or monetary or other obligation shall, in addition to and not in limitation of Landlord's other rights, powers, privileges and remedies under the terms and provisions of



(INITIAL HERE)

3

this lease or otherwise afforded by law in respect thereof, immediately vest Landlord with the unconditional right and option to cancel this lease on ten (10) days' notice to Tenant.

47. **Indemnity.** (a) Tenant agrees, irrespective of whether Landlord shall be negligent, to indemnify, defend and save harmless, Landlord and its partners, officers, directors, contractors, agents and employees from and against any and all liability (statutory or otherwise), claims, suits, demands, damages, judgments, costs, fines, penalties, interest and expenses (including, but not limited to, reasonable counsel fees and disbursements incurred in any action or proceeding), to which Landlord or any such partner, officer, director, contractor, agent or employee may be subject or suffer by reason of any liability or claim for any injury to, or death of, any person or persons or damage to property (including any loss of use thereof) or otherwise arising from or in connection with the use and occupancy of the demised premises or from any work, installation or thing whatsoever done or omitted in or about the demised premises during the term of this lease and during the period of time, if any, prior to the commencement date that Tenant may have been given access to the demised premises, or arising from any condition of the demised premises due to or resulting from any default by Tenant in the performance of Tenant's obligations under this lease or from any act, omission or negligence of Tenant or any of Tenant's agents, contractors servants, employees, sub-tenants, licensees, guests or invitees. The indemnity set forth herein shall survive the expiration or sooner termination of the term of this lease.

(b) Tenant shall reimburse and compensate Landlord as additional rent within five (5) days after rendition of a statement for all expenditures made by or damages or fines sustained or incurred by Landlord (including, but not limited to, reasonable counsel fees and disbursements incurred in connection with any action or proceeding) due to the operation of this Article or non-performance or non-compliance with or breach of failure by Tenant to observe any term, covenant or condition of this lease. If, in any action or proceeding, liability arising out of the negligence of both Landlord and Tenant is established, Tenant agrees, (i) to indemnify Landlord in accordance with the provisions of this Article and (ii) if the claim is covered by insurance to waive any right of contribution against the Landlord.

48. **Holdover.** Tenant acknowledges the extreme importance to Landlord that possession of the demised premises be surrendered at the expiration or sooner termination of this lease. Tenant agrees to and shall (a) indemnify and save Landlord harmless against any and all costs, claims or liabilities directly or indirectly resulting from delay by Tenant in so surrendering the demised premises, including, without limitation: (i) any claims made by any succeeding tenant founded on such delay; (ii) any expenses or losses incurred by Landlord due to the cancellation or modification of a new lease for the succeeding term; and (iii) any other extra expenses of reletting the demised premises and (b) pay a use and occupancy charge in respect of the demised premises equal to the greater of (x) the fair market rental value of the demised premises as determined by an appraiser selected by Landlord; or (y) $192,500 per month (which amount Landlord and Tenant agree is fair and reasonable under the circumstances and not a penalty). In no event shall any provision hereof or otherwise be construed as permitting Tenant to hold over in possession of the demised premises beyond the expiration or termination of the term hereof. The rights and obligations hereunder shall continue after the termination or expiration of this lease.

49. **Security Deposit.** Notwithstanding anything to the contrary contained elsewhere in this lease, in the event Tenant is in arrears in the payment of any rent or additional rent under this lease or if Tenant defaults in the performance of any of the terms of this lease, Landlord may use, apply or retain the whole or any part of the security provided for under the terms of this lease to the extent required for the payment of (a) any rent, (b) any additional rent or (c) any sum which Landlord may expend or be required to expend by reason of Tenant's default, including, without limitation, any damages or deficiency in the reletting of the demised premises, whether accruing before or after summary proceedings, or other reentry by Landlord. Upon each such usage, application or retainage, Tenant shall, on demand, pay to Landlord the sum so used, applied or retained so that the security held by Landlord shall be restored to the amount of security then required under the terms of this lease.

50. **Late Charges.** If Tenant shall pay any amount due hereunder as base rent or additional rent more than five (5) days after the date on which the same is due, then in addition to any other remedies that Landlord may have hereunder or at law, such amount shall bear interest from the due date thereof until paid at the "Interest Rate" (as that term is hereinafter defined) and the amount of such interest shall be deemed to be additional rent hereunder. In addition to the aforesaid interest, if Tenant shall pay any amount due hereunder as base rent or additional rent more than ten days after the date on which the same is due, then in addition to any other remedies that Landlord may have hereunder or at law, a late charge of four (4%) percent shall be payable with respect to the overdue amount monthly thereafter for so long as such amount(s) remain unpaid. The term "Interest Rate," when used in this Lease, shall mean an interest rate equal to two percent (2%) above the so-called annual "base rate" (sometimes herein called the "Prime Rate") of interest established and quoted by European American Bank, New York, New York (or such other commercial bank in New York City as may be designated by Landlord), from time to time, as its interest rate charged for

J28986 v.4

 

4



unsecured loans to its most creditworthy corporate customers, but in no event greater than the highest lawful rate from time to time in effect. Tenant acknowledges that Landlord depends upon the payment of base rental and additional rent hereunder to satisfy its obligations to the holder(s) of any mortgages affecting the building and agrees that it shall indemnify and hold Landlord harmless from and against any loss, claim, expense or damage that Landlord may suffer or incur under any mortgage covering the Building by reason of Tenant's failure to make any payment of Base Rent or Additional Rent on a timely basis.

51. **Expenses of Default, etc.** Whenever any default, or request or action by Tenant causes Landlord to engage an attorney and/or incur any other reasonable expenses, Tenant agrees that it shall pay such expenses within ten(10) days after being billed therefor.

52. **"AS IS".** Tenant agrees to take the demised premises on an "As Is" basis and understands and agrees Landlord shall not be required to perform any work, supply any materials or incur any expense or prepare the demised premises for Tenant's occupancy.

53. **Brokerage.** Tenant represents that the sole brokers who brought about this transaction are F.M. Ring Associates, Inc. and Winnick Realty Group (the "Broker"), and Tenant shall indemnify and hold Landlord harmless from all loss, liabilities and expenses arising out of any claim for a brokerage fee or compensation by any person or entity including the Broker, other than F. M. Ring Associates, Inc. Tenant shall pay any compensation due the Broker pursuant to separate agreement between Tenant and the Broker.

54 **Electrical Services.** Tenant shall contract directly with the public utility furnishing electric service to the building for any and all electric service that Tenant requires within the demised premises. If any additional wires, lines, feeders, risers, switchboards, panel boxes, meters or other equipment shall be required for Tenant's direct electric service, the same shall be installed by Tenant at Tenant's sole cost and expense.

55 **Insurance.** (a) Tenant shall maintain for the mutual benefit of Landlord and Tenant full general and public liability insurance with broad form comprehensive general liability endorsement against claims for bodily injury, death or property damage occurring upon, or in or about the demised premises (including, without limitation, personal injury, death or property damage resulting, directly or indirectly, from any change, alteration, improvement or repair of the demised premises). Such insurance coverage shall be with such limits as may be reasonably required by Landlord from time to time, but not less than $1,000,000 in respect of injury or death to any one person and $3,000,000 in respect of injury or death to more than one person and $500,000 per occurrence for property damage. Such policy or policies shall name Landlord, its mortgagees or managing agents, if any, as additional insureds.

(b) Tenant shall carry the following additional insurance:

(i) fire insurance, under an all risk of physical loss form of policy, covering all of Tenant's fixtures, furniture, furnishings, equipment, signs, store front and all other installations and improvements made by Tenant in or about the demised premises by way of alterations, to the extent of no less than 90% of the replacement value thereof;

(ii) Deleted Prior to Execution.

(iii) during the period Tenant is performing any alterations or repairs, builder's all risk insurance written on a completed value (non-reporting) basis in an amount not less than 100% of the actual replacement value of such alteration or repair (the provisions of subsection (b) (i) above shall be applicable in all other respects to such policy);

(iv) Worker's compensation insurance (including employer's liability insurance, if requested by Landlord) to the extent required by the law of the State of New York and to the extent necessary to protect Landlord and the demised premises against Tenant's worker compensation claims; and

(v) such other insurance as is generally required by landlords of comparable buildings in such amounts as may, from time to time, be reasonably required by Landlord against such insurable risks as at the time are commonly insured against in premises similarly situated (including without limitation such insurance for operation of a dram shop as Landlord may require).



(INITIAL HERE)

5



(c) All policies required to be carried pursuant to this Article shall provide that each shall not be canceled except upon 30 days' prior notice to Landlord and shall be written by companies reasonably acceptable to Landlord and each shall contain endorsements sufficient to effect the following:

(i) the interest of Landlord or Landlord's designated insured shall not be invalidated by any breach or violation by Tenant or any subtenant, licensee or other named insured, of any of the warranties, declarations or conditions of the policies;

(ii) with respect to the liability policies maintained by Tenant, the "hold harmless" and indemnification obligations of Tenant pursuant to this lease shall be insured as a contractual obligation; and

(iii) with respect to the liability policies maintained by the Tenant, such policies shall provide that the release or waiver of subrogation set forth in this lease shall not invalidate the insurance.

(d) Nothing contained hereinabove or in any other provision of this lease shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty.

(e) Prior to the time the insurance hereunder is first required to be carried by Tenant, and thereafter, at least thirty (30) days prior to the expiration of any of such policies, Tenant agrees to deliver to Landlord, for Landlord's approval, duplicate originals of such policies. Tenant's failure to provide and keep such insurance in force shall be regarded a material default hereunder entitling Landlord to exercise any or all of the remedies as provided in this lease in the event of Tenant's default.

56. **Letter of Credit.** (a) In lieu of the cash security deposit provided for in Article 31 hereof, Tenant may deliver to Landlord and in such event shall, except as otherwise provided herein, maintain in effect at all times during the term hereof, an irrevocable letter of credit in form and substance satisfactory to Landlord in the amount required by Article 31 issued by a banking corporation satisfactory to Landlord and having its principal place of business or its duly licensed branch or agency in the State of New York. Such letter of credit shall have an expiration date no earlier than the first anniversary of the date of issuance thereof and shall be automatically renewable from year to year through the date occurring six (6) months after the scheduled expiration of the term, unless terminated by the issuer thereof by notice to Landlord given not less than 45 days prior to the expiration thereof. Except as otherwise provided herein, Tenant shall, throughout the term of this lease (plus the foregoing six (6) month period) deliver to Landlord, in the event of the termination of any such letter of credit, replacement letters of credit in lieu thereof (each such letter of credit and such extensions or replacements thereof, as the case may be, is hereinafter referred to as a "Security Letter") no later than 45 days prior to the expiration date of the preceding Security Letter. The term of each such Security Letter shall be not less than one year and shall be automatically renewable from year to year as aforesaid. If Tenant shall fail to obtain any replacement of a Security Letter within the time limits set forth in this Section 56(a), Landlord may draw down the full amount of the existing Security Letter and retain the same as security hereunder. If for any reason during the term Landlord is concerned regarding the creditworthiness of the bank that has issued the Security Letter, Landlord may require Tenant to obtain a replacement Security Letter from another bank satisfactory to Landlord, and otherwise meeting the criteria set forth above.

(b) In the event Tenant defaults in respect to any of the terms, provisions, covenants and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Landlord may use, apply or retain the whole or any part of the security so deposited and utilize all or any portion thereof to the extent required for the payment of any rent and additional rent or any other sum as to which Tenant is in default or for any sum which Landlord may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, provisions, covenants, and conditions of this lease, including but not limited to, any damages or deficiency accrued before or after summary proceedings or other re-entry by Landlord. To insure that Landlord may utilize the security represented by the Security Letter in the manner, for the purpose, and to the extent provided in this Article 56, each Security Letter shall provide that the full amount thereof may be drawn down by Landlord upon the presentation to the issuing bank of Landlord's draft drawn on the issuing bank without accompanying memoranda or statement of beneficiary.

(c) In the event that Tenant defaults in respect of any of the terms, provisions, covenants and conditions of the lease and Landlord utilizes all or any part of the security represented by the Security Letter but does not terminate this Lease as provided in Article 17 hereof or otherwise, Landlord may, in addition to exercising its rights as provided in Section 56(b) hereof, retain the unapplied and unused balance of the principal amount of the Security Letter as security for the faithful performance and observance by Tenant thereafter of the terms, provisions, and conditions of this Lease, and may use, apply, or retain the whole or any part of said balance to the extent required for payment of rent, additional rent, or any other sum as to which Tenant is in



default or for any sum which Landlord may expend or be required to expend by reason of Tenant's default in respect of any of the terms, covenants, and conditions of this lease. In the event Landlord applies or retains any portion or all of the security delivered hereunder, Tenant shall forthwith restore the amount so applied or retained so that at all times the amount deposited shall be not less than the security required by Article 31.

(d) In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the lease and after delivery of entire possession of the demised premises to Landlord. In the event of a sale of the Building or leasing of the Building, Landlord shall have the right to transfer any interest it may have in the Security Letter to the vendee or lessee and Landlord shall thereupon be released by Tenant from all liability for the return of such Security Letter, provided such vendee or lessee assumes any responsibilities of Landlord with respect to such Security Letter, and Tenant agrees to look solely to the new landlord for the return of said Security Letter; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the Security Letter to a new landlord. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Landlord nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance. In the event of a sale of the Building Landlord shall have the right to require Tenant to deliver a replacement Security Letter naming the new landlord as beneficiary and, if Tenant shall fail to timely deliver the same, to draw down the existing Security Letter and retain the proceeds as security hereunder until a replacement Security Letter is delivered.

57. **Air-Conditioning.** Tenant is required in accordance with Article 58 hereof to include in Tenant's Work the installation of a new air-conditioning system. Tenant shall, at its sole cost and expense, operate and maintain the air-conditioning system (the "A/C System"), and shall perform any and all necessary repairs to, and cause any and all replacements of, the A/C System during the term hereof. All electricity used in connection with the operation of the A/C System shall be obtained by Tenant upon, and subject to, all of the terms, covenants and conditions contained in Articles 54 and 12 hereof and this Article 57. The A/C System, and any replacements thereof or additional air conditioning units installed by Tenant during the term of this lease shall be and remain at all times the property of Landlord, and Tenant shall surrender the A/C System and all such repairs and replacements to Landlord in good working order and condition on the expiration of the term. Tenant's obligation to maintain the A/C System shall include, but not be limited to, the periodic cleaning and/or replacement of filters, replacement of fuses and belts, the calibration of thermostats and all startup and shut down maintenance of the A/C System. Such maintenance obligations shall be performed throughout the term of this lease, on Tenant's behalf, by a reputable air conditioning maintenance company engaged by Tenant at its expense, and first approved by Landlord. In the event Tenant shall fail to engage an air conditioning maintenance company as aforesaid, Landlord may (but shall not be obligated to) perform such maintenance and/or engage an air conditioning service company at Tenant's expense to perform the aforesaid maintenance to the A/C System, and Tenant shall pay on demand as additional rent hereunder all expenses incurred by Landlord in connection therewith.

58. **Tenant's Initial Installation.** (a) Tenant hereby covenants and agrees that Tenant will, at Tenant's own cost and expense, and in a good and workmanlike manner, make and complete the work and installations in and to the demised premises set forth below in such manner so that the demised premises will be a tasteful and dignified first-class restaurant.

(b) Tenant, at Tenant's expense, shall prepare a final plan or final set of plans and specifications (which said final plan or final set of plans, as the case may be, and specifications are hereinafter called the "final plan") which shall contain complete information and dimensions necessary for the construction and finishing of the demised premises and for the engineering in connection therewith. The final plan shall be submitted by Tenant to Landlord for Landlord's written approval, which approval shall not be unreasonably withheld or delayed. Tenant shall promptly reimburse Landlord upon demand for any costs and expenses incurred by Landlord in connection with Landlord's review of Tenant's final plan. If Landlord shall disapprove the final plan, Landlord shall set forth its reasons for such disapproval and itemize those portions of the final plan so disapproved. Landlord shall not be deemed unreasonable in withholding its consent to the extent that the final plan prepared by Tenant pursuant hereto involves the performance of work which is of a structural nature, involves areas of the building outside of the demised premises, affects the exterior of the building or any of the building systems or involves the installation in the demised premises of materials or equipment which do not equal or exceed the standard of quality adopted by Landlord for the building.

(c) In accordance with the final plan, Tenant, at Tenant's expense, will make and complete in and to the demised premises the work and installations (hereinafter called Tenant's Work) specified in the final plan. Tenant agrees that Tenant's Work shall include, inter alia, the installation of the A/C System. Tenant agrees that Tenant's Work will be performed with the least possible disturbance to structural and mechanical parts of the building and to other tenants and Tenant will, at its cost and expense, promptly comply with all laws, rules and regulations of all public authorities having jurisdiction in the Building with

329786 v.4



7



reference to Tenant's Work and the requirements of all applicable insurance companies. Tenant shall complete Tenant's Work by no later than May 31, 2000 and shall expend for construction and construction materials comprising Tenant's Work not less than $900,000. The estimated actual cost of Tenant's Work is hereinafter called the "Work Cost". As security for the performance of Tenant's Work and the payment of the Work Cost, Tenant is depositing simultaneously herewith the sum of $1,200,000 in the form of $600,000 in cash and three (3) letters of credit, each in the amount of $200,000 (the "Security Letters") with Landlord in escrow (the "Escrow Fund"). The Security Letters referred to herein shall be in form and substance and drawn upon a bank approved by Landlord, and the proceeds thereof shall be available upon the presentation of a sight draft only and without any accompanying statement or memorandum. The Work Cost shall be paid by Landlord from such escrow as Tenant's Work proceeds, in installments no more frequently than monthly, and upon receipt of (i) invoices from Tenant's contractors for completed portions of Tenant's Work, (ii) waivers of lien with respect to the portion of the contract price then payable, and (iii) architects' certificates stating that the portion of Tenant's Work for which payment is sought has been completed in a good and workmanlike manner, and that after giving effect to such payment, there remains with Landlord in escrow hereunder an amount sufficient to pay 1.334 times the balance of the Work Cost. The Escrow Fund shall be operated as follows: at such time as Tenant has expended $400,000 of the Work Cost, one of the security letters shall be drawn down and added to the cash portion of the Escrow Fund; at such time as another $200,000 of the Work Cost is expended, the second security letter shall be drawn down and the proceeds thereof added to the cash portion of the Escrow Fund, and at such time as the last $200,000 of the Work Cost is expended, the remaining security letter shall be drawn down and the proceeds thereof added to the cash portion of the Escrow Fund. Whatever amount is remaining in the Escrow Fund when Tenant's Work has been completed and fully paid for and Landlord is in receipt of such documentation as it shall require, including without limitation architectural certificates and waivers of lien and cancelled checks to establish the foregoing, and provided that Tenant is not then in default under the obligations of this lease, Landlord shall remit to Tenant the balance then remaining of the Escrow Fund. For purposes of disbursements hereunder, the Work Cost shall be deemed to mean the cost of actual construction and materials only and shall not in any event be deemed to include any so-called "soft costs" or the cost of Tenant's personal property. Tenant acknowledges that the rentals and certain other economic terms contained in this lease are predicated upon Tenant's commitment to expend at least $900,000 upon the foregoing improvements (without regard to soft costs, etc.). If for any reason Tenant fails to expend at least such amount on actual construction comprising Tenant's Work, then any addition to any other remedy Landlord may have as a consequence of Tenant's default, Landlord may retain an amount equal to the deficiency from the Escrow Fund as compensation therefor. If at any time during the progress of Tenant's Work, Landlord shall conclude that the Work Cost will exceed $900,000 or that the balance then being held by it in escrow pursuant to this paragraph (c) is less than 1.334 times the amount needed to pay the balance of the Work Cost, Tenant shall, within seven (7) days after Landlord's demand therefor, deposit with Landlord such additional funds as may be required in Landlord's judgment so that the amount being retained by Landlord in escrow hereunder shall not at any time be less than 1.334 times the balance of the Work Cost.

59. **Basement Space.** Notwithstanding anything to the contrary contained in this lease, Tenant agrees that Tenant's occupancy of the portion of the demised premises located on the basement floor of the building (hereinafter referred to as the "Basement Space") shall be subject to the following additional terms and conditions:

(a) Landlord shall not be obligated to perform any work or incur any expense to prepare the Basement Space for Tenant's use;

(b) Landlord shall not be responsible for providing any utilities or services to or within the Basement Space;

(c) Notwithstanding any language to the contrary contained in this lease, in no event shall Landlord be responsible for any water damage to the Basement Space or to any other Tenant's property therein, and Tenant hereby agrees to assume the risk of any such water damage;

(d) Tenant shall use the Basement Space only for lawful purposes ancillary to the use permitted pursuant to Article 2 hereof, but Landlord makes no representation that it is suitable for such purpose nor shall this lease or the rent payable hereunder be affected if it shall not be suitable therefor or for any other purpose;

60. **Shop Covenants.** (a) Tenant agrees that at all times (i) the appearance of the ground floor portion of the demised premises (including the lighting and other appurtenances thereto), the appearance and deportment of all personnel employed therein, and (ii) the appearance, number, location, nature and subject matter of any kinds or forms of signs displayed in or about the ground floor portion of the demised premises or any other portion thereof viable from the street, will in each instance be only such as meets with Landlord's approval and, if at any time disapproved by Landlord, Tenant shall remove the basis for such

725986 v.4



8

disapproval in such manner and within such time as may be specified by Landlord in a written notice by it to Tenant for such purpose.

(b) Tenant further covenants and agrees that it will:

(i) at Tenant's expense, clean the interiors and exteriors of the windows and doors (including, in each case, the frames therefor) in the demised premises and in the perimeter walls thereof whenever in the judgment of Landlord necessary, and Tenant will not require, permit, suffer or allow any such window or door to be cleaned in violation of the Labor Law of the State of New York or of any other law or ordinance or of any rule order or regulation for any governmental authority having jurisdiction thereover; at Tenant's expense, clean and polish the inside and outside of the store fronts of the demised premises except the side of the store fronts facing the lobby, whenever in the judgment of Landlord necessary;

(ii) at Tenant's expense, keep the demised premises clean, and in a neat, sanitary condition, keep the ventilating hoods over food heating and warming equipment and duct work to the main vertical risers clean, in a manner and under conditions reasonably satisfactory to Landlord, keep all plumbing in the demised premises and sanitary systems and installations serving the demised premises in a good state of repair and operating condition to the points they connect with the main vertical risers and stacks of the Building, bag and store within the demised premises all garbage, rubbish and other debris and remove the same from the demised premises daily between the hours of 6:00 p.m. and 8:00 a.m. through or to areas designated by Landlord to the Building's designated disposal area (if any) under conditions approved by Landlord upon arrival of the carting company engaged by Tenant to remove the same (so that the same shall be stored in accordance with clause (xv) hereof and in no event shall the same be left on the sidewalk pending arrival of such carting company);

(iii) at Tenant's expense, promptly replace any and all glass (including mirrors) in the demised premises and in the perimeter walls thereof, the frames for such glass, and any lettering and ornamentation on such glass, which may be broken or damaged, regardless of the cause of such damage even though the same may be occasioned by the negligence of Landlord, its servants or agents, it being the intent of this provision that Landlord be hereby indemnified to the full extent to which it would be were such glass, frames, lettering and ornamentation insured for the benefit of Landlord on the customary form of glass insurance carried by Landlord with respect to other premises in the Building;

(iv) keep the demised premises open for business at least during the hours from 11:30 a.m. to 3:00 p.m. and from 5:00 p.m. to 8:00 p.m.;

(v) display no lettering, sign, advertisement, notice or object and permit no such display on or inside the windows or doors or on the outside of the perimeter walls of the demised premises except with the prior written consent of Landlord, except that nothing contained herein shall be deemed to prevent Tenant from posting its menu, hours of operation and awards in or on the window of the demised premises, provided that the same is done in a manner and does not occupy more space than is customary for first-class restaurants;

(vi) from time to time during the term hereof, at its expense and subject to Landlord's approval, redecorate the demised premises and refinish, renew and/or replace the fixtures, furnishings, decorations and equipment therein, if necessary, to preserve the good appearance of the demised premises in keeping with the general standard maintained for the Building;

(vii) not install, place or permit any awning on the perimeter walls of the demised premises unless provided or consented to in writing by Landlord and each such awning so provided or consented to shall, to the satisfaction of Landlord, be kept clean and in good order and state of repair and appearance by and at the expense of Tenant, including, whenever necessary in the judgment of Landlord, the replacement of awning coverings with materials approved by Landlord;

(viii) not use, play or operate or permit to be used, played or operated any sound making or sound reproducing device in the demised premises, except in such manner and under such conditions so that no sound shall be heard outside of the demised premises, and Tenant covenants and agrees that Tenant, at Tenant's expense, will observe, comply with and adopt such means and precautions as Landlord may from time to time reasonably request in such connection;

(ix) not permit Tenant's employees to enter the Building's lobby, or other public areas of the Building;

(x) not under any circumstances bring into or have delivered from the street to the demised premises through the lobby of the Building any food, supplies and/or merchandise;

(xi) eliminate from the demised premises all obnoxious fumes, odors or gases, and all such fumes, odors or gases shall be prevented completely from entering any portion of the Building of which the demised premises are a part. No fumes, odors or gases shall be exhausted to the Building corridors, street or sidewalk in front of or adjacent to the demised premises;

(xii) at its own cost and to Landlord's satisfaction install all necessary and proper grease traps or other apparatus and will keep the same maintained in good order and repair for the purpose of preventing any stoppage or interference with the general plumbing or sewerage system of the Building of which the demised premises form a part emanating from the demised premises. Tenant will, at its sole cost and expense, promptly remove and/or repair any stoppage or interference with said general plumbing or sewerage system due to the carelessness, neglect, improper conduct, acts of omission or commission, or other cause of Tenant, its agents, licensees, invitees, or employees or otherwise originating from the demised premises;

(xiii) keep demised premises free from rats, mice, insects and other vermin and will, if and when reasonably requested by Landlord, employ and keep employed, at Tenant's sole cost and expense, a competent rodent, insect, or vermin exterminating company;

(xiv) maintain a fire suppression system similar to Ansul in good working condition throughout the term of this Lease, and shall install and maintain such equipment and such service contracts as may be required at any time to maintain the lowest insurance premiums available for the uses conducted in the demised premises; and

(xv) provide a refrigerated garbage storage room (plans and specifications thereof to be approved by Landlord) or other means of disposing of garbage reasonably satisfactory to Landlord.

(xvi) not permit nudity, nude service or nude entertainment or displays of any kind or nature in the demised premises whether or not on the part of Tenant's employees, contractors, or invitees and regardless of sex of those involved, e.g., in no event shall the demised premises be utilized in whole or in part as or for a so-called "topless" or "bottomless" bar or place of entertainment, nor shall so-called "lap dancing" or other similar provocative behavior or activities be permitted and, furthermore, nothing contained herein shall be deemed in any way to supplant the provisions of Article 37 hereof, all of which shall remain in effect and are hereby confirmed, it being intended by the parties that the provisions of this clause (xvi) expand upon and not replace the prohibitions contained therein.

(xvii) keep the sidewalks in front of the demised premises clean and free from any garbage, debris, obstruction and free from snow and ice.

61. **Addendum to Article 28**. Notwithstanding the provisions of Article 28, the parties acknowledge that Tenant will require water for purposes other than ordinary lavatory purposes and that Tenant's water use shall be metered. Landlord may, at Landlord's election in lieu of making such meter installation in accordance with Article 28, require Tenant, at Tenant's expense, to install the same. In any event the $100.00 monthly charge provided in Article 28 shall be a minimum monthly charge for water and sewer services. To the extent that the actual charge therefor in accordance with the foregoing shall exceed $100.00 for any month, the $100.00 minimum monthly charge shall be credited toward the total charge and Tenant shall be responsible only for the excess.

62. **Elevator Service**. Tenant shall not be permitted the use of the elevators of the building for deliveries or any other purpose and access to the portion of the demised premises located on the second floor shall be obtained only through the portion of the demised premises located on the ground floor.

63. **Asbestos Removal**. Tenant acknowledges that it has made an inspection of the demised premises and agrees that if, in connection with the performance of Tenant's Work or thereafter in connection with the performance of any subsequent alterations or improvements, Tenant encounters asbestos or materials containing asbestos which, in accordance with applicable legal requirements are required to be encapsulated or removed or otherwise abated, Tenant shall be solely responsible therefor and for all costs in connection therewith, and Landlord shall have no responsibility therefor whatsoever.

64. **Closing Costs.** Simultaneously herewith Tenant is paying to Landlord the sum of $99,360 to compensate Landlord or as reimbursement for expenditures and obligations Landlord has incurred in connection with this transaction such as improvement and other costs incurred to prepare the demised premises for Tenant's occupancy, brokerage fees, legal fees and the like.

65. **Availability of Premises.** Notwithstanding that the commencement of the term as provided herein is to occur on January 1, 2001, Tenant shall be permitted use of the portions of the demised premises comprising the basement and second floor of the Building beginning on the date the lease is executed and delivered. Any such use prior to the commencement of the term shall be subject to all of the provisions of this lease, except that Tenant shall not be required, in connection therewith, to pay therefor any base rental.

66. **Attorneys' Fees.** Wherever herein it is the obligation of Tenant to reimburse Landlord for attorneys' fees incurred by Landlord, Tenant's obligation to reimburse Landlord shall be limited to such attorneys' fees as are reasonable.

67. **Existing Violations.** If and to the extent that there exist violations of record affecting the Building as of the date of this lease and removal thereof of record is required for Tenant to obtain permits and/or licenses required for the performance of Tenant's Work or the commencement of the lawful conduct of its business, Landlord shall cooperate with Tenant in securing the removal thereof provided that if Landlord incurs any reasonable costs or expenses in connection therewith, Tenant shall reimburse Landlord therefor upon demand as additional rent hereunder.

68. **Freight Elevator.** Tenant acknowledges that it has been advised that the freight elevator of the Building is not in regular service. Nevertheless, if for any reason or at any time such elevator is available for use and an employee of Landlord is on duty at the Building and available to operate the same, such elevator may, upon request, be utilized by Tenant to provide handicap access for Tenant's employees between the ground floor and the basement of the Building.



728986 v.4

11



# EXHIBIT B

## Declaration of Christopher Russell

Schuyler G. Carroll
Jeffrey Vanacore
George V. Utlik
ARENT FOX LLP
1675 Broadway
New York, New York 10019
Tel (212) 484-3900
Fax (212) 484-3990

Attorney for Roy Babitt, Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
In re                                                 :
                                                      :        Chapter 7
RUSSELL RESTAURANT GROUP, LLC,                        :
                                                      :        Case No. 04-14738 (RDD)
                    Debtor.                            :
                                                      :
                                                      :
------------------------------------------------------X

## DECLARATION OF CHRISTOPHER RUSSELL

CHRISTOPHER RUSSELL, pursuant to 28 U.S.C. § 1746, declares as follows:

    1.    I founded and operated as the general manager Russell Restaurant Group, LLC

(the "Debtor") from November 2000 through June 2004.

    2.    I submit this declaration in support of the objection by Roy Babitt, the Chapter 7

Trustee in the above-captioned case (the "Trustee"), to the administrative expense claim filed by

Michael Ring, Frank Ring, *et al.*, Tenants in Common, c/o FM Ring Associates, Inc. (the

"Claimant").

    3.    I have personal knowledge of the facts set forth in this Declaration and, if called

to testify, I could and would testify competently concerning those facts.

    4.    On June 30, 2004, pursuant to an agreement with the Claimant, I, on the Debtor's

behalf, moved out all the property that was not included on a schedule of property that the

Claimant required to be surrendered (the "Schedule of Property Required to Be Surrendered"), abandoned the non-residential real property located at 331 Park Avenue South, New York, New York (the "Premises"), and surrendered the keys to the Premises' superintendent. The Premises' superintendent was present throughout the moving process, taking pictures and ensuring that no item listed on the Schedule of Property Required to Be Surrendered was removed.

5.     Later, when I attempted to retrieve some financial documents from the Premises, I was precluded from re-entering the Premises because the Claimant, or someone on the Claimant's behalf, changed the locks to the Premises. As a result, I was never able to return to the Premises since June 30, 2004.

6.     On July 14, 2004 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

7.     Since the Petition Date, the Debtor proceeded with liquidating the estate and never operated its business.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this _17_ day of December, 2009 at New York, New York.

_Christopher Russell_

- 2 -