**MORRISON COHEN LLP**
909 Third Avenue
New York, New York 10022
(212) 735-8600
Joseph T. Moldovan
Michael R. Dal Lago

Attorneys for Michael Ring, Frank Ring, *et al.*,
Tenants in Common, c/o FM Ring Associates, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
In re:                                          : Chapter 7
                                                :
RUSSELL RESTAURANT GROUP, LLC,                  :
                                                : Case No. 04-14738 (SMB)
                Debtor.           :
                                                :
------------------------------------------------------------ X

## RESPONSE TO OBJECTION OF ROY BABITT, CHAPTER 7 TRUSTEE, TO ADMINISTRATIVE EXPENSE AND SECURED CLAIMS FILED BY MICHAEL RING, FRANK RING, ET AL., TENANTS IN COMMON AND MOTION TO COMPEL PAYMENT OF POST-PETITION RENT

Michael Ring, Frank Ring, et al., Tenants in Common, c/o FM Ring Associates, Inc. ("*FM Ring*"), by its attorneys, Morrison Cohen LLP, hereby submit their response ("*Response*") to the Objection of Roy Babitt, Chapter 7 Trustee ("*Trustee*"), to Administrative Expense and Secured Claims Filed by Michael Ring, Frank Ring, Et Al., Tenants in Common ("*Objection*"), dated December 21, 2009, filed by the Trustee of the Chapter 7 estate of Russell Restaurant Group, LLC, the above-captioned debtor ("*Debtor*").

### PRELIMINARY STATEMENT

1.    The underlying facts concerning the issues raised by the Trustee in the Objection are straightforward, simple, and undisputed.

#2163559 v2 \014737 \0019

- The Debtor and FM Ring are parties to a pre-petition lease, dated October 1, 2000 ("*Lease*"), whereby the Debtor, as Tenant, leased from FM Ring, as Landlord, the premises described in the Lease as "a portion as currently divided of the Ground Floor and the Basement and Second (2nd) Floor" of 331 Park Avenue South, New York, New York ("*Premises*");

- On July 14, 2004 ("*Petition Date*"), the Debtor filed its voluntary Petition for relief under Chapter 7 of the Bankruptcy Code[1];

- The terms of the Lease provided for an agreed upon criteria that must be met in order for the Premises to be surrendered.

- Prior to the Petition Date, the parties did not enter into any agreements, and surely not a written agreement signed by FM Ring, that would effectuate a surrender of the Premises in accordance with the terms of the Lease. A copy of the Lease is annexed hereto as Exhibit A;

- The Debtor reported on Schedule G to its voluntary Petition, a copy of which is annexed hereto as Exhibit B, that as of the Petition Date, the Lease was property of the estate;

- The Debtor reported on Schedule B to its voluntary Petition, a copy of which is annexed hereto as Exhibit C, that as of the Petition Date, $30,000 in fixtures and equipment owned by the Debtor was located on the Premises;

- The initial Trustee in this case, Warren Graham ("*Initial Trustee*"), never filed a motion to reject the Lease, as permitted under Section 365 of the Bankruptcy Code;

- The Lease remained in full force and effect during the post-petition, pre-rejection option period;

- All of the Debtors' fixtures and equipment as outlined in Schedule B remained at the Premises during the post-petition, pre-rejection option period;

- The Debtor never paid any rent to FM Ring as required under Section 365 of the Bankruptcy Code during the post-petition, pre-rejection option period;

- The Lease was deemed rejected by virtue of Section 365(d)(4) of the Bankruptcy Code on September 12, 2004 ("*Rejection Date*");

- The Initial Trustee in this case agreed that the rejection of the Lease occurred by virtue of Section 365(d)(4) of the Bankruptcy Code by signed letter, dated September 15, 2004, a copy of which is annexed hereto as Exhibit D;

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the Objection.

- FM Ring submitted its claim for an administrative expense on December 27, 2004 for, among other things, unpaid post-petition, pre-rejection rent in the amount of $70,000.

2. These facts cannot be disputed. They are simple and straightforward. What the Trustee is trying to do is manipulate these facts in the hopes that the Court will expunge FM Ring's claims. Such efforts are unnecessarily argumentative and wasteful. As demonstrated below, once the undisputed facts are examined, it is clear that there is no legal basis for the Trustee to object to FM Ring's proof of claim. For these reasons, FM Ring respectfully requests that the Court overrule the Objection.

## Response to Objections

A. **The Trustee's Argument that FM Ring Failed to give Notice of its Administrative Claim or Comply with the Requirements of Sections 503 is Nothing More Than a Red Herring**

3. The Trustee has asserted its objection to FM Ring's administrative claim on the basis that some how the claim asserted by FM Ring is deficient because it was prepared using Official Form 10.

4. This argument is nothing more than a red herring. The fact of the matter is, even if all of the Trustee's arguments were accepted, which FM Ring fully disputes, no bar date for asserting Chapter 7 administrative claims has been established by the Court in this case. In fact only recently, on January 27, 2010, has the Trustee's former attorneys, Davidoff Malito & Hutcher LLP, filed its final application for fees and expenses. That motion is scheduled to be heard prior to the hearing on the Objection herein. Similarly, the Trustee's current attorneys have yet to make an application to the Court for their own fees and expenses. Thus, even to the extent that the Court finds in favor of the Trustee on this point, FM Ring is not, and should not be, timed barred from asserting a Chapter 7 administrative claim against the estate by motion or otherwise.

5. Moreover, FM Ring respectfully submits that the Trustee is misguided in looking to Section 503 as the basis for FM Ring's claim. Rather, Section 365(d)(3) of the Bankruptcy Code clearly controls. That section sets forth that the "trustee shall timely perform all the obligations of the debtor. . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, <u>notwithstanding Section 503(b)(1) of this title</u>" (emphasis added). This section of the Bankruptcy Code does not contemplate, but rather specifically eliminates, the need for FM Ring to make a claim under 503(b)(1) of the Bankruptcy Code.

6. In that fashion, the Trustee's reliance on Section 503(b)(1) of the Bankruptcy Code is misguided because that section is not applicable. Instead, in accordance with Section 365(d)(3) of the Bankruptcy Code, the Trustee must pay or be compelled to pay the post-petition, pre-rejection rent due under the Lease as an administrative expense without any of the requisites set forth in Section 503 of the Bankruptcy Code for asserting an administrative claim. See Collier 3.01[3][b] ("if the Trustee does not effect such performance, and does not obtain an extension of time for performance under Section 365(d)(3), it appears that the landlord may apply to the Court to compel performance.") In this regard, FM Ring is prepared to file a motion with this Court, if necessary, to compel the Trustee to pay the post-petition, pre-rejection rent that is currently owed.

7. Simply stated, the issues raised by the Trustee is not a question of the allowance of an administrative claim under Section 503 of the Bankruptcy Code, but rather a question of payment of post-petition rent under 365(d)(3) of the Bankruptcy Code as an administrative expense. FM Ring is not timed barred from asserting its right to payment under section 365 of the Bankruptcy Code. FM Ring chose to do so by asserting a claim against the estate. However,

if necessary, FM Ring will timely move this Court to compel the payment of the post-petition, pre-rejection rent or, in the alternative, give FM Ring an allowed claim against the estate.

B. **There is no Proof that the Premises were Surrendered Before the Petition Date**

8. In reliance of the Declaration of the Debtor's principal, Christopher Russell ("*Russell Declaration*"), the Trustee makes the argument that the Lease was somehow modified prior to the Petition Date or that the Premises were surrendered. As explained in the accompanying Declaration of Frank Ring, nothing could be further from the truth.

9. The fact of the matter is there was never a surrender of the Premises in accordance with the terms of the Lease.

10. The Trustee's argument that the Lease was surrendered pre-petition is perplexing. Section 24 of the Lease provides for the following:

> No act or thing done by [FM Ring] or [FM Ring's] agents during the term hereby demised shall be deemed in acceptance of a surrender of said premises and no agreement to accept such surrender shall be valid, unless in writing signed by [FM Ring].

11. In the instant matter, the Trustee relies solely on the Russell Declaration which alleges that Mr. Russell abandoned the Premises. However, none of the alleged actions sworn to by Mr. Russell could effect a surrender of the Premises given the agreed upon terms of the Lease.

12. Mr. Russell also asserts in the Declaration that he "surrendered the keys to the Premises' superintendent." This, too, is untrue and, otherwise, does not qualify as a surrender of the Premises. Not only does FM Ring disputes that such keys were ever handed over, but Section 24 of the Lease also provides as follows:

> No employee of [FM Ring] or [FM Ring's] agent shall have any power to accept the keys of said premises prior to the termination of the lease and the delivery of keys to any such agent or employee

shall not operate as a termination of the lease or a surrender of the premises.

13. Based upon the foregoing, therefore, the alleged actions taken by the Debtor would not effect a valid surrender of the Premises. The Trustee offers no writing evidencing the surrender, as required under the agreed upon terms of the Lease, because there is no writing in existence. The Trustee offers no proof that the alleged surrender of the keys to the Premises' superintendent was a surrender because such actions does not qualify as a surrender under the terms of the Lease agreed to by the Debtor. Thus, the Debtor's purported surrender of the Lease is untenable under the facts herein.

14. Furthermore, notwithstanding the Debtor's purported pre-petition surrender, the Debtor's Schedule E lists the Lease as an asset of the estate. Thus, the same individual that is submitting a declaration to this Court stating that the Premises was surrendered pre-petition, also submitted a prior contrary declaration contemporaneously with the filing of the Petition that the Lease was in effect on the Petition Date and was an asset of the estate.

15. The fact is, the Lease remained in effect post-petition and there was never a surrender under the terms of the Lease. The Initial Trustee continued to use the Premises to store the Debtor's assets – described on Schedule B as "all fixtures and equipment located within restaurant" – which apparently had a value of $30,000. These assets remained on the Premises throughout the post-petition, pre-rejection option period under a lease that was not surrendered. This is further evidenced by the contemporaneous writing of the Premises' superintendent which states the following:

> "On July 22, 2004 Chris Russell showed with paralegal (Andrea Klein) approx (sic) 3:15 p.m. They took inventory of all items in restaurant on all 3 levels. Also, Chris Russell handed all his keys to Andrea Klein (a paralegal for the Initial Trustee)."

A copy of this writing is annexed hereto as Exhibit E.

16. Clearly, the Trustee is attempting to have it both ways by asserting that yes, the Debtor listed the Lease as an asset of the estate and listed assets as being located on the Premises, but at the same time the Lease was surrendered pre-petition notwithstanding the applicable terms of the Lease and the Debtor entering the Premises post-petition and handing the keys to the former trustee's paralegal. One of these conflicting assertions is disingenuous and untenable. The Trustee simply cannot have it both ways.

C. **FM Ring Need Not Demonstrate an Actual Necessary Cost of Preserving the Estate**

17. As set forth above, this argument is misguided. A landlord need not demonstrate an actual, necessary cost of preserving the Estate in connection with the payment of the post-petition, pre-rejection rent under Section 365 of the Bankruptcy Code. Rather, the Trustee must perform all of the obligations under the lease notwithstanding Section 503(b)(1) of the Bankruptcy Code or its "actual, necessary cost of preserving the estate" requirement. As this Court has noted in an examination of the interplay between sections 365 and 503 of the Bankruptcy Code, albeit in the separate context of proration of stub-rent, "Congress intended section 365(d)(3) to nullify the requirement of section 503(b) that a creditor prove benefit to the estate before it can obtain administrative expense status for a post-petition rent claim. This is exactly what section 365(d)(3) states; it applies 'notwithstanding section 503(b)(1) of this title.'" In re *Stone Barn Manhattan LLC*, 398 B.R. 359 (S.D.N.Y 2008).

## **CONCLUSION**

18. In an attempt to preserve the remaining assets in this estate so that such funds can be used to pay the pending administrative claims, which are comprised mostly – if not entirely – of professional fees, the Trustee is throwing as many balls in the air as possible in the hopes that FM Ring's claim will be disallowed. The facts of this matter and the applicable law, however,

are clearly in favor of FM Ring, who has not received its fair treatment provided for under the Bankruptcy Code.

19. For the foregoing reasons, FM Ring respectfully submits that the Court overrule the Trustee's objection and compel the Trustee to pay the outstanding post-petition rent.

Dated: New York, New York
February 5, 2010

                MORRISON COHEN LLP


By: /s/ *Michael R. Dal Lago*
      Joseph T. Moldovan
      Michael R. Dal Lago
      909 Third Avenue
      New York, New York 10022

      *Attorneys for Michael Ring, Frank Ring, et al., Tenants in Common, c/o FM Ring Associates, Inc.*